United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AHMED JAMAL,

          Plaintiff,

    v.

DODGE & COX, et al.,

          Defendants.

Case No.  25-cv-01675-HSG

**ORDER DENYING DEFENDANT DODGE & COX'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Re: Dkt. No. 33

Pending before the Court is Defendant Dodge & Cox's ("Dodge & Cox" or "D&C" or "Defendant") Motion for Partial Summary Judgment ("Mot."), Dkt. No. 33.[1]  The Motion is fully briefed.  *See* Plaintiff's Opposition ("Opp."), Dkt. No. 35; Defendant's Reply ("Reply"), Dkt. No. 36.  The Court finds the Motion appropriate for disposition without oral argument and it is deemed submitted.  *See* Civil L.R. 7-1(b); Dkt. No. 37.  Having carefully considered the parties' arguments, the Court **DENIES** the Motion.

## I.    BACKGROUND[2]

Plaintiff Ahmed Jamal ("Mr. Jamal" or "Plaintiff") worked at Dodge & Cox as a Fixed Income Trading Assistant from January 1, 2021 until his termination on January 12, 2024. Declaration of Ahmed Jamal ("Jamal Decl."), ¶¶ 10, 24; Declaration of Sarah Clifford ("Clifford Decl."), ¶ 4.  Plaintiff, who identifies as both Black and Arab of Egyptian national origin, alleges that his direct supervisor discriminated against him based on his race and national origin.  Jamal Decl., ¶ 11.  When Plaintiff complained about this treatment, he allegedly experienced retaliation.

---

[1] Plaintiff also sued his direct supervisor, Nicholas Lockwood, who is represented by the same counsel.  Mr. Lockwood has not joined this Motion.

[2] At this stage, the Court views the record in the light most favorable to Plaintiff, and makes all reasonable inferences in his favor.

Jamal Decl., ¶ 12.  The parties do not dispute that from August 25 to September 1, 2023, and again from September 1 to September 29, 2023, Plaintiff took two medical leaves of absence.[3]  Jamal Decl., ¶ 14; Deposition Tr. of Ahmed Jamal ("Jamal Dep. Tr.") at 156:19.  Plaintiff's medical provider cleared him to resume work on October 3 or 4, 2023.  Jamal Decl., ¶ 15; *see also* September 29, 2023 Medical Note, Ex. F to Clifford Decl., Dkt. No. 33-4.

On October 4, 2023, Plaintiff attended an in-person meeting with Nicholas Lockwood, his manager; Sarah Clifford, D&C's Director of Human Capital and Administration; and the Director and Associate Director of Fixed Income (Plaintiff's group).  Jamal Dep. Tr. at 198:19-201:8; Deposition Tr. of Sarah Clifford ("Clifford Dep. Tr.") at 125:17-126:9.  It is undisputed that Plaintiff was able to "check the market" from the work account on his phone from between October 4 and October 20, and that he was paid from October 4 onward.  Clifford Decl., ¶ 6; Jamal Dep. Tr. at 231:22-232:15.

On October 9, 2023, Plaintiff requested a different manager.  Plaintiff's October 9 Medical Note, Ex. H to Clifford Decl.  Via email, Ms. Clifford told Plaintiff that this reassignment was not possible, but that "we are still open to discussing potential accommodations."  *Id.*  Ms. Clifford also asked Plaintiff for information from his medical provider explaining how Plaintiff's medical condition impairs his ability to do his job, and how any proposed accommodation might help him perform that job.  *Id.*  Ms. Clifford additionally asked Plaintiff to provide her with "evidence/documentation and a formal report and timeline of events."  *Id.*  Plaintiff responded by requesting reconsideration of D&C's decision.  *Id.*  On October 13, 2023, Plaintiff emailed Ms. Clifford the requested report and timeline, titled "Concerns & Evidence."  Plaintiff's October 13, 2023 Email, Ex. G to Clifford Decl.  D&C investigated Plaintiff's complaints, and on October 19, 2023, Plaintiff met with Ms. Clifford and D&C's General Counsel.  Clifford Dep. Tr. at 216:17-217:16; Jamal Dep. Tr. at 216:15-22.

On October 20, 2023, Plaintiff met over Zoom with three of D&C's senior managers—

---

[3] Plaintiff retroactively designated each leave as FMLA/CFRA leave after he was terminated in January 2024, and Dodge & Cox approved that designation.  Jamal Decl., ¶ 15; Exhs. L, N, O to Clifford Decl.

D&C's General Counsel, D&C's Director of Fixed Income, and Ms. Clifford—to discuss a successful "return by [Plaintiff] to work[.]" Jamal Decl., ¶ 18. Plaintiff alleges that at that meeting, D&C "continually raised additional issues and provoked me," and that he was "frustrated with D&C and its behavior[.]" Jamal Decl., ¶ 20. Ms. Clifford testified that Plaintiff was "really agitated" with "a lot of movement" during this video call. Clifford Dep. Tr. at 178:12-180:6. The three attributed to Plaintiff "many concerning comments," Clifford Dep. Tr. at 180:7-182:6, including:

- "This is me believing in Nick, looking up to him, admiring and loving him and feeling betrayed by him."
- "I worked way too hard in my life to let it end like this."
- "I will fight to the end."
- "If Nick tries to change the narrative about my performance, it truly will not be the best outcome for him."
- "If I have to, I will but I will never work with that man again."
- "I would look him straight in the eye with betrayal the same way he has looked me in the eye."

Draft Letter to Physician in Anticipation of Fitness for Duty Exam, Ex. J to Clifford Decl., ¶ 16; Ms. Clifford's Notes, Ex. C to Clifford Decl., ¶ 9; Clifford Dep. Tr. at 177:2-178:17; 180:7-10; 181:3-182:6; 189:21-190:5; 190:21-191:10; 194:22-195:7; 197:14-198:11; 199:5-14.

Ms. Clifford testified that Plaintiff's comments made D&C "really, really concerned" about Plaintiff's behavior and about the safety of Plaintiff and D&C's other employees. Clifford Dep. Tr. at 201:4-202:14. Ms. Clifford also testified that D&C believed Plaintiff did not, at that moment, possess the judgment necessary to perform his duties for D&C's clients.[4] *Id.* at 202:15-22. D&C quickly decided to remove Plaintiff's access to his work accounts, and on October 21,

---

[4] Plaintiff disputes much of the context for his remarks recorded in notes made by Ms. Clifford. For example, when asked at his deposition if he had said on October 19, "I have nothing further to lose," he clarified that he had said: "I have nothing else to lose in this negotiation with the firm, and for that reason, I will continue pursuing legal action if I'm not returned to work." Jamal Dep. at 216:23-217:12. Plaintiff's deposition transcript contains many other examples where Plaintiff disputes what was said or outright denies that he made the comment attributed to him.

United States District Court
Northern District of California

United States District Court
Northern District of California

2023, D&C asked Plaintiff to submit to a fitness for duty examination administered by a medical provider of D&C's choosing.  Exhs. E & K to Clifford Decl.; Clifford Dep. Tr. at 202:23-203:9.  Ms. Clifford explained to Plaintiff that D&C was asking him to submit to the fitness for duty examination because D&C was concerned that he was not able to exercise sound judgment and interact appropriately with his coworkers.  Exhs. E & K to Clifford Decl.  The parties do not dispute that over the next twelve weeks, D&C paid Plaintiff, who D&C agrees was on leave.  Clifford Dep. Tr. at 226:2-10; Ex. K to Clifford Decl.  D&C gave Plaintiff a January 5, 2024 deadline to confirm that he would sit for the exam and submit the appropriate paperwork, but Plaintiff never agreed to sit for the exam.  Exhs. K & M to Clifford Decl.  On January 9, 2023, D&C notified Plaintiff that it was terminating his employment effective January 12 for failing to respond to the January 5 deadline to sit for the fitness for duty exam.  Ex. M to Clifford Decl.

In February 2025, Plaintiff brought this action against Defendants Dodge & Cox and Nicholas Lockwood.  *See* Complaint ("Compl."), Dkt. No. 1.  Plaintiff amended his complaint in March, bringing fourteen claims against Defendants, including claims against Dodge & Cox for violation of the Family and Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), and disability discrimination under California's Fair Employment and Housing Act ("FEHA").  *See* First Amended Complaint ("FAC"), Dkt. No. 11.

## II.   LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).  "If,

United States District Court
Northern District of California

however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quotation omitted). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In the Ninth Circuit, "it should not take much for [a] plaintiff in a discrimination case to overcome a summary judgment." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 499 (9th Cir. 2015) (citing cases). "This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record." *Id.* (employer's evidence of a non-discriminatory motive does not warrant entry of summary judgment when the employee also proffers evidence to the contrary).

## III.    DISCUSSION

Dodge & Cox moves for summary judgment on Plaintiff's First, Twelfth, Thirteenth, and Fourteenth claims regarding (1) Dodge & Cox's request that Plaintiff sit for a fitness for duty exam, and (2) Plaintiff's request for accommodation. First, Dodge & Cox argues that it is entitled to summary judgment on Plaintiff's First, Twelfth, Thirteenth, and Fourteenth claims regarding the fitness for duty exam request because there is no dispute that Plaintiff had been restored to work before he was asked to sit for the exam. Mot. at 11-15. Dodge & Cox further argues that it had a reasonable basis to request such an exam as a matter of law, because it had an "objectively job-related and business-necessitated reason for requesting the exam." Mot. at 2-3, 15-18. Second, Dodge & Cox argues that it is entitled to summary judgment on Plaintiff's Twelfth, Thirteenth, and Fourteenth claims regarding Plaintiff's request for accommodation because Plaintiff's request was per se unreasonable, and Plaintiff was liable for the breakdown in the interactive process. Mot. at 18-21.

### A.    A Material Dispute of Fact Exists as to Whether Plaintiff Had Returned to Work.

Plaintiff alleges that D&C violated the FMLA (Claim 1), Titles I and V of the ADA (Claims 12 and 13), and FEHA (Claim 14) by requiring him to take a fitness for duty examination before he had returned to work.  *See* FAC, ¶¶ 33-36, 103, 109-111, 118; Opp. at 4.  D&C contends that it is entitled to summary judgment on these claims because there is no dispute that Plaintiff had been restored to work before he was asked to sit for a fitness for duty exam.  Mot. at 11 (citing cases establishing that an employer may seek its own evaluation of the employee's fitness for duty after the employee is restored to work).

The Court finds a genuine dispute of material fact exists as to whether Plaintiff had been restored to work prior to D&C's request that he sit for the exam.  The parties do not dispute that Plaintiff was cleared to return to work by October 3 or 4, and that Plaintiff's FMLA leave ended on October 3.  Mot. at 12; Exhs. L, N, & O to Clifford Decl.  Nor do the parties dispute whether Plaintiff was on "paid leave."  On November 29, 2023, Ms. Clifford wrote to Plaintiff that D&C had allowed him to "stay on a paid leave" but "cannot have you sitting on the sidelines indefinitely, nor can we return you to work without a fitness for duty exam."  Ex. K to Clifford Decl., at JAMAL_D&C_000203.  On December 19, 2023, Ms. Clifford again wrote that "we can only continue your paid leave through December 31."  *Id.* at JAMAL_D&C_000197.  But critically, the parties dispute whether Plaintiff had returned to work, i.e., whether he had been "restored" to his or her "position of employment" or "an equivalent position."  29 U.S.C. § 2614(a)(1); *see* Mot. at 11 ("Plaintiff's time off ended on October 3, 2024"); *see* Ex. K to Clifford Decl. (Plaintiff wrote to Ms. Clifford on January 9, 2024 that he was not interested in severance but "should be returned to work").  Viewing the facts in the record in the light most favorable to Plaintiff, the Court finds that a reasonable jury could find in his favor on this point.

The caselaw cited by the parties does not support D&C's position that Plaintiff's in-person discussions with D&C's senior managers regarding his job duties and access to his work account on his phone conclusively establish as a matter of law that Plaintiff had "returned to work" before the exam request.  Both parties rely on the California Court of Appeals' decision in *White v. County of Los Angeles*, 225 Cal. App. 4th 690, 704 (2014), for the proposition that "a bright line

United States District Court
Northern District of California

exists at the employee's return to work." Under *White*, "[b]efore the return to work, the employer must accept the employee's physician's certification and return the employee to employment; after the return to employment, the FMLA protections no longer apply, and the employer may require an FFDE consistent with the ADA." *Id.* First, the Court observes that, contrary to the parties' apparently mutual misunderstanding, a state court's interpretation of federal statutes and regulations is not binding on this Court. And second, *White* did not analyze whether the plaintiff's placement on paid administrative leave at home constituted a return to employment under the FMLA, as the parties there did not dispute whether or when the plaintiff had been "restored to employment." *Id.* at 698. Moreover, even to the extent that *White* has persuasive value, the investigator there was assigned to administrative duty, while D&C has offered no evidence that Plaintiff here was assigned to any duties beyond "conferring with D&C personnel" regarding his job duties and "gathering evidence for his internal complaint." Mot. at 14-15. As one example, a reasonable jury could agree with Plaintiff that these tasks do not reflect that he had been restored to work as defined by the FMLA. Accordingly, because at least one material dispute exists as to these claims, the Court DENIES summary judgment as to them.

**B.    A Material Dispute of Fact Exists as to whether Dodge & Cox Has Shown that its Fitness For Duty Exam Request was Justified by Business Necessity Reasons.**

At least one material dispute also exists as to Claims 1, 12, 13, and 14. Dodge & Cox argues that under the ADA, FMLA, and FEHA, it was permitted as a matter of law to require Plaintiff to sit for a fitness for duty exam, because the exam was "job related and consistent with business necessity." Mot. at 15-16. The "business necessity standard may be met even before an employee's work performance declines if the employer is faced with significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job." *Brownfield v. City of Yakima*, 612 F.3d 1140, 1146 (9th Cir. 2010). But the Ninth Circuit has cautioned that "the 'business necessity' standard . . . is quite high, and is not to be confused with mere expediency." *Id.* at 1145 (citation and internal quotation marks omitted).

D&C has not shown as a matter of law that it met the *Brownfield* standard for finding business necessity for seeking the exam. In *Brownfield*, the plaintiff was a police officer who

exhibited highly emotional responses on numerous occasions, and the Ninth Circuit's consideration of the exam's legitimacy was "heavily colored by the nature of Brownfield's employment," since "[p]olice officers are likely to encounter extremely stressful and dangerous situations during the course of their work." *Id.* at 1146 (noting that police officers are armed and could "do tremendous harm if they act irrationally"). The Ninth Circuit also cautioned that "a minor argument with a coworker or isolated instances of lost temper would likely fall short of establishing business necessity." *Id.* at 1146. Viewing Plaintiff's comments and behavior as reflected in the record in the light most favorable to him, a reasonable jury could find that there was not a sufficient basis to require the exam. The Court thus finds that at least one material dispute of fact exists as to whether D&C has met the business necessity standard.

### C.    A Material Dispute of Fact Exists as to Whether Plaintiff Failed to Engage in the Interactive Process.

Finally, at least one material dispute exists as to Claims 12, 13, and 14, precluding the Court from granting D&C's motion for summary judgment. Plaintiff alleges that D&C violated Titles I and V of the ADA (Claims 12 and 13) and the FEHA (Claim 14) because D&C failed to provide him with a reasonable accommodation for his disability of extreme anxiety. FAC, ¶¶ 100-103, 109, 118. D&C contends that it is entitled to summary judgment on these claims because Plaintiff's request to work under a different manager was per se unreasonable, Mot. at 19, and because Plaintiff, rather than D&C, failed to engage in the interactive process. Plaintiff has withdrawn Claims 12, 13, and 14 to the extent those claims are based on a failure to accommodate him by assigning him to a new manager, but maintains the claims to the extent they are based on D&C's demand that he sit for a fitness for duty exam. Opp. at 4.

The Court finds a genuine dispute of material fact exists as to whether liability for the breakdown in the interactive process falls on Plaintiff or D&C. The Court's review of the emails between Ms. Clifford and Plaintiff reflects that D&C has not met its "ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd.,* 210 F.3d at 1102. The email correspondence provided by D&C reflects that in the weeks after the parties' October 20 meeting, the parties negotiated over the parameters of the fitness for duty exam and the

United States District Court
Northern District of California

scope of the medical information Plaintiff would provide.  *See generally* Ex. K to Clifford Decl. At no point, for example, did Plaintiff completely fail to respond or engage with D&C's emails. Again viewing the record in the light most favorable to Plaintiff, as the Court must at this stage, D&C is not entitled to summary judgment on these claims.

## IV.    CONCLUSION

The Court **DENIES** Defendant Dodge & Cox's motion for summary judgment.  Dkt. No. 33.  The Court's summary judgment holdings here are based on the stringent standards for obtaining summary judgment in employment cases, and the Court expresses no view as to whether a jury ultimately will find Plaintiff's case persuasive.  *See Yartzoff v. Thomas*, 809 F.2d 1371, 1377–78 (9th Cir. 1987).

**IT IS SO ORDERED.**

Dated:  April 3, 2026

HAYWOOD S. GILLIAM, JR.
United States District Judge